Second case for argument 21-2418, Minnesota, Don Huizenga et al. v. ISD No. 11 et al. Mr. Dickey, when you're ready, you may proceed. Thank you, Your Honors. Thank you, Counsel, and may it please the Court. Simply put, for standing purposes here, this case is just like Everson v. Board of Education of Ewing Township from 1947. There the Supreme Court allowed school district taxpayers to bring a First Amendment claim in federal court, and the situation was analogous, a complaint about an illegal subsidy by the school district. The only case akin to this one in recent decision is that of the Sixth Circuit in Smith v. Jefferson County Board of School Commissioners, 641F3197, especially at pages 211 through 215, where the Sixth Circuit held that municipal taxpayers to local school districts had standing to sue over constitutional violations. Counsel, was that case in your briefs? Yes, Your Honor. Okay, thank you. I didn't see it off the bat, but I managed it off the bat. Go ahead. No worries. That's why I said the site again, just to make sure. Well, and while we're talking about Everson, its First Amendment, and there's always been a different standing in First Amendment, as you well know, completely different standing on establishment, medium different standing on free exercise. Why does that apply to this kind of case? Well, Your Honor, first of all, as the Smith case pointed out about Everson, that the Everson standing was, while it was in the context of an Establishment Clause case, it was not limited just to that in the court's view there. And I would also note that with an Establishment Clause case, the issue really is that the government is providing a subsidy, right, a forced subsidy using taxpayer dollars to enable a conduct that is objectionable to the litigant. And in this case, you have the same situation exactly, whereas in a Free Exercise Clause claim, for example, you're talking about a restriction on the individual litigant's speech itself. So it's a different context, and this context actually fits really well into the Establishment Clause line of cases, consistent with the Supreme Court's decisions in Janus, Johans, United Foods, and so on. So these forced subsidy cases are where the court really should look. Can I interrupt you again? Of course. Because these are the things that are at the top of my mind, you might as well hear them. I do want to hear them. What about the fact that I looked at your complaint, you never even say they're taxpayers. You never even say that they have property there. You never even say the very basic things that Missouri, for example, where I come from has taxpayer standing. So you open by saying they paid all these taxes for all these years. And you don't have that at all. Is that almost fatal to your case? No, Your Honor. In fact, we do allege Paragraph 2 of the complaint says that plaintiffs are taxpayers of the school district and the state. Paragraph 2. Wait, wait, wait, wait. I thought you said they're residents and taxpayers of the state. I don't believe so, Your Honor. Let me take a look again. I said that the union reimburses said that in Paragraph 2, it says the instead the union reimburses school at the much lower substitute rate and the taxpayers of Minnesota and the school districts such as plaintiffs pay for whatever the union doesn't. And then I thought at the top, all you said at the top of your complaint, I saw you just said residents. Now, correct me if I'm wrong. I'll look quickly. I want to go. I want to make that really clear on the record here. Joint Appendix Page 1, Paragraph 2 in the complaint, it says instead the union reimburses school at the much lower substitute rate and the taxpayers of Minnesota and the school districts such as plaintiffs pay for whatever the union doesn't. Also on Joint Appendix Page 3, it says that Huizenga pays taxes to both the state and to Anoka County, which are allocated ISD 11. Huizenga has standing to sue as a taxpayer and the same thing for the other two plaintiffs. And in addition, you know, your honor, under the Iqbal Twombly standard, in terms of well, now back up now, I've got it in front of me. OK, you say Minnesota taxpayer and a resident of the county pays taxes to the state and to the county. Now, this county has more than one school district and it says which are allocated to this school district. Right. Correct. But so you don't say that you pay any taxes you can trace to the school district. How do you trace the tax to the school district? Well, your honor, it's so first of all, again, I want to push back a little bit here because we do say in paragraph two right off the bat in the complaint that we are taxpayers of the school district and paragraphs 13 through 15 talk about payment of taxes that are allocated to the school district. And here's how you know that they're traceable. First of all, they live within ISD 11, as they as they allege, clearly the residents. They also also the fact is that Minnesota statute two seventy six point ten requires that taxes that are earmarked for ISD 11, which would come from plaintiffs, be paid through the county auditor as a pass through. And that is specifically for the school district. They're not for anybody else. And do you allege these things you're telling us? I don't allege we don't allege the specific existence of Minnesota statute two seventy six. Yeah, yeah, yeah, yeah. No, but we we allege that it actually worked. That's what I'm trying to say. A lot of Missouri statutes that don't work. And so now is this one that works or not? The Minnesota statute definitely works. I mean, this is exactly how all levies and referenda work in Minnesota as you you pay taxes to your county, which the auditor county auditor then verifies how much is the proper amount to allocate to the school district. And then it's just passed through the county auditor is just a pass through entity. And that's exactly the same situation as in the Everson case in nineteen forty seven. The New Jersey law from from nineteen forty seven is exactly the same as the Minnesota law, which is why the Everson case is so directly on point here in terms of taxpayer standing. And just to give the court a clear picture of this, we cited this in our brief and cited to the nineteen sixty seven New Jersey session laws, which referred which reincorporated revised statute eighteen colon seven dash seven eight, which is the same statute cited by the district court to try to distinguish our case, which was recodified in nineteen sixty seven. And it required as follows in relevant part. And I won't read the whole thing, but I'm just going to clean it up a little bit. The Board of Education shall submit to the voters of the district the amounts of money fixing determinants budget to be voted on for use of public schools in the district. And if there's a majority passage, that's my paraphrase. The secretary of the Board of Education shall certify the amounts to the county board of taxation and the amount or amount so certified shall be included in the taxes assessed, levied and collected in the municipalities comprising the district. Same exact situation. You've got it. You've got taxes that go through the county to the school district. And, you know, this is something that especially those like the teachers union who their lifeblood is taxation. They know exactly what we're talking about when we allege that we pay taxes to the school district. And we're not going to pay taxes to the school district because we don't have enough money allocated to the school district. So in terms of there's no question that there's fair notice in the pleading we have here, we allege everything that we needed to in this complaint to bring us within the municipal taxpayer standing doctrine. OK, now and I'm sorry to dwell on this, but it's occupied my mind. Now, you haven't mentioned Doremus, which is also the same era, 52, as Everson. And it says you've got to in fact, it characterizes Everson, more importantly, limits Erickson, Everson, more importantly, to say measurable appropriation or disbursement of school district funds occasioned solely by the activities complained of. Do you think you meet that standard? Yes, your honor, we do. And so Doremus, of course, mainly deals with in that case, I believe it was focused on state taxpayer standing. But it's certainly so I don't believe that the measurable appropriation standard necessarily required is required by Everson. But but I do think that in this case, we meet that anyway. And that's so that's beside the point. And the reason why we meet that is because we've identified for the court in the complaint and throughout of our throughout our arguments and in the pleadings that there is a subsidy that is paid by the school district to the union in the collective bargaining agreement between the parties that requires no full reimbursement from the union to the school district for the paid leave time used by the school district employees to do political advocacy for the union. And so we have identified that measurable appropriation disbursement. In fact, we've identified the amount that it would cost in terms of per diem. We're talking about between 75 and 350 bucks a day for up to 100 hours in a year, which can be which is cumulative. So we can add up beyond that. So they don't lose it. So we've identified the exact expenditure we're talking about, and I would also note for the court just on this point in particular, that in the Smith case, the Sixth Circuit noted that one of the arguments here is that, well, you know, there's no evidence that they don't they don't we don't believe that there's any diminution of the public fisc in this case. Well, first of all, it's not true because, again, the school district is paying out more than it's getting back. And secondly, even if that were true, as the Smith case, Smith case really deeply examines this on pages 211 through 215 of its decision, that that would not make any difference, as I think. And I want to quote the Smith case here at page 211. Taxpayers standing in this context will not turn on whether it was a bargain to violate the Constitution. So, Your Honor, I hope I've gotten past this point, because this is a very interesting one, an important one, but I want to make sure I'm clear on it. Well, can I follow up just a little bit on that? Yes. And maybe I understand the theory is that they get reimbursed, that the school district gets reimbursed at the at the rate of a substitute teacher, which is less than a normal. I'm just sort of wondering, is there such a thing as unpaid leave? Or if, for instance, if these teachers are on a flat salary that they're going to get no matter what, what would be the out-of-pocket cost, the measurable cost? Do you understand what I'm getting at? I do, Your Honor. So, first of all, in terms of the exact mechanics of how unpaid leave works, I will be honest, I don't know exactly how that would work in this context. Obviously, unpaid and paid leave are different. And monetarily different. But I can say this for sure. Minnesota statute 179A, point, I forget the exact statute. Well, it's in the Public Employee Labor Relations Act, provides already for unpaid leave to Minnesota public employees who wish to take leave to do business, union business or anything like that. So there's already a state statute on point that covers this. And this is exactly why we've also briefed this issue later on in our principal brief. This is exactly why this is a subsidy, because the school district is shelling out more money than it gets back because it has to cover the entire cost of those salaries. The union, you know, we offered to the union in this case that we would not move for a preliminary injunction. All they had to do was stop the practice and take unpaid leave. And they didn't want to do that because there is a monetary benefit to them. And to their end, and it's the cost of school district, more money. So to answer your question, it's a little bit of a roundabout way to do it, Your Honor. But yes, there is a difference between unpaid leave in this provision. So I'm almost at the point of my rebuttal time and I want to reserve some time for rebuttal. But I would just again know, I believe that this case is on all fours with Everson and we haven't gotten into the actual First Amendment compelled subsidy right issue. But I would commend to the court all of the Janus, Johans, United Foods and other cases which are very similar to our case, which are thoroughly briefed, I think. And I'll reserve the rest of my time for rebuttal unless there are other questions at this point. Thank you, Mr. Dickey. Court will hear from Mr. Siegel. Thank you, Your Honor, and may it please the court. This is a case about taxpayer standing in the question of whether taxpayers have a right under the free speech clause to enjoin government spending on private speech they find disagreeable. The district court decided the case on the threshold question of standing. We believe that this court should, too. That's because plaintiffs can satisfy neither of the narrow exceptions to the prohibition on taxpayer standing that they invoke here today. Now, I'll start with plaintiff's status as county taxpayers and their ability, their efforts to fit their claims within the anomalous and narrow doctrine of municipal taxpayer standards. There are several barriers to plaintiff's claims to municipal taxpayer standing, but merits beginning with their failure to satisfy the standard they set for themselves on page 11 of their opening brief. Their plaintiffs claim that they can satisfy the standing doctrine because they have alleged, quote, a good faith pocketbook action within the meaning of the Supreme Court's case in Duremus. They cannot do so. In Duremus, the Supreme Court established an easy to administer rule for state taxpayers standing. It refused to entertain a taxpayer's claim arising under the establishment clause to a statute requiring public school teachers, excuse me, to read several verses of the Bible aloud to their students at the beginning of every school day. Now, there's no doubt that that allegedly unconstitutional conduct took up school resources in the form of time of salaried employees. Well, counsel, wait, wait, wait. I think the Supreme Court said the opposite. They said it didn't. And the D.C. Circuit has certainly said that's the key to Duremus in modern times. The challenge practice didn't cost them anything, didn't cost the school district anything. So I think you're contrary to what the Supreme Court said in Duremus and what the D.C. common cause case said in 88. Because they said there was no additional cost, period, period, period. Good. That's correct. There's no additional cost that's solely occasioned by the challenge conduct. However, there's no doubt that school teachers would have been paid their salaries for the time spent reading the Bible aloud to their students. And we believe that this case is on all fours in that respect. That is because when a teacher takes leave under the challenge policy, they would be paid their salaries whether or not they invoked that benefit. That is to say that there would be a payment of salary whether a teacher is on leave or not. There is thus no additional expenditure that is solely occasioned by the challenge conduct. We believe that that's what there is. There is a limit on paid leave, I would imagine. And there is a provision for unpaid leave. So why why isn't there an incremental cost here? There's no incremental cost that is, in the words of Duremus, solely occasioned by the challenge to conduct. The payment is for a invocation of leave. Excuse me. The payment is for a salary, whether or not a teacher takes leave. And in that respect, we believe that the case is on all fours with Duremus. Indeed, if the rule were such that the payment of salary to a municipal employee who is alleged to have engaged in unconstitutional conduct were sufficient to satisfy Article 3, then the federal courts would be open to taxpayer challenges whenever a taxpayer believes that some... Let me let me get at it this way. Let's assume that a teacher gets two weeks of paid leave. Can a teacher take... And this teacher, Teacher X, has already taken her two weeks and wants to take another day to go work at the union. Do they get an extra paid leave day? I believe that the union leave policy at issue here, Your Honor, is applicable to the bargaining unit. So the bargaining unit would have 100 days paid leave to be allocated as the union sees fit. So if there's a personal capital over and above the normal paid leave time. Yes, it would be a separate, a separate provision. Why isn't that then an incremental cost? That seems obvious to me, then. Because the cost is merely the payment of salary. And in this respect, right. Yes, it's the difference between what's reimbursed and the payment of salary. Correct, but the payment of salary would be rendered whether or not. I don't think so. I mean, I think that's what we just talked about. If this is over and above the other paid leave time that's available under the collective bargaining agreement, isn't there an incremental cost? Your Honor, the teacher would be merely due the salary that they would be owed, regardless of whether there was, in fact, an indication of the benefit. Just as in Doremus, a teacher would be paid whether or not they read from the Bible. They're getting paid for time they're not rendering services to the school district. Correct, Your Honor. And in Doremus, the teachers were paid for reading from the Bible, notwithstanding the allegation that that conduct was unconstitutional. The Supreme Court nevertheless turned them away, even though in the allegations of the dissenting plaintiff in that case, resources were diverted away from traditional education and toward unconstitutional promotion of religion in their allegation. And again, Your Honor, I emphasize that there are many benefits to this bright line test in Doremus. It keeps the courts from being flooded with taxpayer claims seeking to hold municipalities to account for any payment of salary associated with allegedly unconstitutional conduct. And it's an easy to administer bright line test that has been endorsed by other circuits. In this regard, I would recommend that the court review the Altman decision from the Second Circuit and the recent Tenth Circuit case of American Humanist Association. There, the court explained the courts, excuse me, that mere payment of salary in support of allegedly unconstitutional conduct would be insufficient to satisfy the Article III injury in fact requirement. Well, counsel, surely you're stating it too broadly because my goodness, if the school district paid somebody to be a Catholic priest and come to the school, that's surely unconstitutional, right? Yes, Your Honor, that's a good point. If the impediment would be merely if there was some on-the-clock conduct that was incidental to the normal performance of their duties. So, for example, you know, the minutes required to read aloud from the Bible. If the entirety of a teacher's salary were associated with allegedly unconstitutional conduct, then that conduct, that payment would be solely occasioned by the challenged conduct. And that case would be different, Your Honor. What about half the time? Half the time social studies, half the time priests. What about that one? That would be a closer question than this one, Your Honor, and in those circumstances, I don't know. Well, I think you got my point. I know I'm a little ham-handed here, but tell me, I'm not, I think Judge Grunder's on to something on his, but of course, I understand they kind of believe something yet different, which is the difference between what the school district's paying and what the school district's paying. But what you're paying them back in your bargaining agreement, there's always a subsidy. Why isn't there always a subsidy by the way you've structured it? Because the payments are solely for the additional expenditure associated with the obtaining of a substitute. So salary continues to be paid, but any additional expenditure above the payment of the salary, excuse me, of the wages due to the substitute teacher are covered by the union. Such that there's no additional marginal expenditure associated with invocation of the leave policy. Now, I thought you paid the lower substitute rate and they pay the higher teacher rate. Tell me why I'm not getting the math, you know, where the subsidy is. They're paying the higher rate to the teacher. Suppose they're at the high end, the highest, most tenured person. And so as they get the cheapest substitute they can, minimum wage substitute, pardon me if I offend the school teachers out there. But why isn't there a subsidy there? Your Honor, if the subsidy, it would not be any additional expenditure solely occasioned by the challenge conduct in the words of Duranus. Just as the allegedly unconstitutional conduct in that case, the reading allowed at the beginning of every school day of allegedly prescribed religious promotion, would be no additional expenditure solely occasioned by the challenge conduct. So any additional expenditure solely occasioned by the challenge conduct would be the cost associated with obtaining a substitute. And those costs in turn are reimbursed by the union whenever the union leave benefit is invoked, Your Honor. Are you making your collective bargaining agreement like the Constitution? I think the only way your argument works is that the collective bargaining has the same stature as the U.S. Constitution. Now, do you grasp my question? Again, it's ham-handed. I apologize, Your Honor. I'm not sure... Okay, because you're saying the collective bargaining agreement, what you're really saying to me I think is, the collective bargaining made this deal, and we enforce the deal, and we don't even look at the subsidy. Because that's your authority, right? For what you're really doing. I'm terribly sorry, Your Honor. I'm not following... It's the same subsidy point, and you've answered it. And you've answered it in your brief. Thank you, Your Honor. And my apologies for... No, no. My apologies for a poor question. Go ahead. If I may turn briefly to plaintiff's status as state taxpayer. Well, in addition, I know that there are separate barriers to their status as municipal taxpayer standing. I won't belabor the forfeiture point that was discussed earlier. Merely, I'd commend to the court the filings in the district court submitted by plaintiffs, specifically the opposition to the motion to dismiss, and the opening memorandum of law, and reply in support of the motion for a preliminary injunction. Those can be found at dockets number 29, 21, and 35, respectively. Now, as to plaintiff's status as state taxpayer, I'll try to be brief on this point. As the Supreme Court pointed out in its decision in Dandler-Chrysler, state taxpayers only have standing on the same terms as federal taxpayers. Thus, to satisfy the state taxpayer claims here, plaintiffs would have to satisfy the narrow exception of Floss against Cohen, which permitted taxpayers to challenge certain legislative spending in violation of the Establishment Clause. They thus asked this court to do what no court has done before, and expand Floss to cover claims outside of the Establishment Clause. We believe that the Supreme Court's decision in Hine against Freedom from Religion Foundation precludes that result. There, the Supreme Court overcame calls to overrule Floss entirely, only by narrowly confining it to its facts. Counsel, does Hine really have a holding? That's a plurality opinion. Does it really have a holding? Tell me if it does. Yes, Your Honor. Under United States against Marx, the holding would be the narrowest decision necessary to sustain the judgment. And there, the holding would be the narrow decision of the plurality decision. Justices Scalia and Thomas, in their concurrence on the judgment, sought to overrule Floss in its entirety, and so the narrow opinion. Thank you. Thank you. Yes, Your Honor. Now, turning very briefly to the merits, if I may, we believe that the merits of the claim are squarely foreclosed by binding Supreme Court authority. And there, I commend to the Court the case FCC against League of Women Voters. It's a case on which we relied heavily in our brief, but which goes unmentioned in the reply. There, the Supreme Court expressly held that taxpayers do not have the right to enjoin in the name of the free speech clause. Public spending on private speech, they find disagreeable. The case considered a statute prohibiting certain educational broadcasters who receive public subsidies from editorializing on the air. And the Supreme Court concluded that that prohibition would survive only if it were narrowly tailored to a substantial government interest. I've got to interrupt you. I've got to interrupt you again. That's 1984. And of course, the election case is a 76 case. Those are the main ones that you rely on. Hasn't the Supreme Court done a sea change on this challenges to these kind of restrictions since then? No, Your Honor. In no decision has the Supreme Court just considered a taxpayer challenge to a generally applicable tax or even a taxpayer challenge for that matter. None of the cases cited by plaintiffs are to the contrary. The lead case on which they rely, Janus against AFSCME, was instead a challenge to contributions from public employees, not taxpayers, to, in that case, a union. There are no cases to consider generally applicable taxation. And indeed, Janus or none of its progenies so much as cited either Buckley, the election case to which Your Honor referred, or the Whitman brothers. Yes, Your Honor. In any case, we believe that both of those decisions squarely preclude this case. Now, I end just by emphasizing the potentially far-reaching implications of the claim here, which would open up the federal courts to taxpayers seeking to win from the federal courts public policies that they were failed to secure at the polls. We believe that that result is precluded both on the merits and on standing, but merely to entertain it would be not merely to expand the scope of standing under Article 3, but also to undermine the traditions of federalism and Republican governments that inform the standing requirements. Thank you, Your Honor. Thank you, Mr. Siegel. Mr. Dickey, you're rebun. Thank you, Your Honor. So first, I'm going to say I'm happy that opposing counsel has commended to you our briefs from the district court. I think they're pretty well written. So I hope you read them too. I would like to deal with the concept here that there's some kind of flooding of the federal courts if this case is properly recognized as within the municipal taxpayer standing doctrine. This is a unique situation compared to it's certainly different from state and federal taxpayer standing claims in general, because the population of the Independent School District 11, Anoka-Hennepin School District, is far less than any of those. So a lot of these cases that the respondents or appellees are relying on have to do with federal taxes and they have to do with millions and hundreds of millions of taxpayers. And it's a different situation here. The total population of ISD 11 is 241,000 from 86,000 households. Eighty-five percent of those households are within a home. It is axiomatic that the number of taxpayers in a political subdivision are far fewer than the total number of people. And ISD 11 itself has at least 40,000 students who do not pay taxes. Presumably there's a substantial additional number of students within ISD 11 who are in private or parochial schools. So really, and ISD 11, by the way, is the largest school district by population in the state of Minnesota by far. And so, you know, the total number of people who could actually mount a taxpayer challenge like this to a collective bargaining agreement is probably around 125,000 would be my guess, but it's not exact science. And in comparison, in the Janus case, the Supreme Court noted that Mark Janus was one of the 35,000 public employees in Illinois who are represented by the American Federation of State, County, and Municipal Employees, Council 31. That's the Janus case at page 2461. And so I would, I submit to the court that Mark Janus's relationship to his union as an agency fee payer and Janus was not much more intimate than appellant's relationship is to ISD 11 and the teachers union here. I'd also like to circle back on the subsidy issue again, because I think it's a really important point to the court. I'd like to commend to the court joint appendix pages 156 through 161, which is a letter sent by independent school district 11 to the union in this case, explaining exactly why they view this as a legal subsidy. I'd also, I got the citation now 179A.07 subdivision six of the Minnesota statutes provides for unpaid leave. And it's unlike the National Labor Relations Act, which has a no docking clause. So Minnesota has made a specific decision not to allow this kind of a relationship. So I'm out of time, your honors. I just note that we would like the court to reverse the decision below and issue a preliminary injunction consistent with the pleadings. And I thank you for your time. And the court thanks you for both counsel for your appearance today and the arguments. Interesting case and it will be submitted and decided in due course.